DUNNILL *v.* BLOOMBERG

[No. 167, September Term, 1961.]

*Decided March 29, 1962.*

*Motion for rehearing filed April 28, 1962, denied May 17, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Franklin I. Freeman* and *Alfred Gilbert Scholle,* with whom were *Scholle & Isaacs* on the brief, for appellant.

*James H. Langrall,* with whom were *David R. Cohan, Weinberg & Green* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff appeals from a judgment for the defendant entered upon the verdict of a jury in favor of the latter.

This is a somewhat unusual boulevard intersection automobile accident case. The plaintiff was driving south in the City of Baltimore on Reisterstown Road, a through highway; the defendant was driving west on an intersecting, unfavored street, Springhill Avenue. There was a boulevard stop sign

facing the defendant on the east side of Reisterstown Road. His view of traffic on the boulevard as he approached the intersection was obstructed by parked automobiles on Reisterstown Road. There is a conflict of evidence as to whether the defendant did or did not stop at the stop sign. Whether he did or not, he proceeded into Reisterstown Road far enough, "a few feet," to see beyond the parked cars before he could get a view of southbound traffic on that street. It was after that he says he first saw the plaintiff's car coming south. He did not give any estimate of the then distance between the two cars, doubtless because, as he admitted after the accident, he "did not see" the plaintiff. We take this to mean that he did not see him until just before the accident.

The plaintiff's testimony is that he was about fifty feet north of the intersection when he saw the defendant's car either stopping or moving very slowly. Then as the plaintiff continued on to about twenty or thirty feet north of the intersection he saw the defendant's car proceeding out into the intersection. The plaintiff veered to the right to avoid a collision; the defendant stopped at about the middle of the street and no collision between the two cars occurred. The plaintiff's car, however, struck a curb as he veered to avoid the defendant's car, was badly damaged and turned around, and the plaintiff was injured.

The accident happened at about 6:10 P.M. on October 12, 1958. There was still daylight, dusk was coming on. The plaintiff's speed was variously estimated as from 25 to 35, possibly 36 or 37 miles an hour. The speed limit on Reisterstown Road was 30 miles an hour. At the intersection here in question Reisterstown Road had two lanes for northbound and two lanes for southbound traffic, not, however, divided by any median strip.

The plaintiff requested a number of instructions, one of which was "that the right of way to all traffic on the thru highway or boulevard makes it the duty of every driver approaching such a highway * * * to stop and yield the right of way to all vehicles approaching thereon and that under the facts submitted in this case the defendant is clearly liable." The

court denied the requested instruction and gave quite a different one as to the duties of one entering a through highway. This was, in effect, that an unfavored driver's entry upon a part of the through highway, following a stop, would not be a violation of the duty to yield the right of way, if such entry could be effected with safety and not "in such a way as to create the impression on the one who is moving on the through highway that he [the unfavored driver] is going to cross the through highway and thereby get in front [of] or interfere with the driver who is on the through highway, and * * * has the right-of-way." With this as a part of the instructions the court submitted the issues of the defendant's negligence and of the plaintiff's contributory negligence to the jury. The verdict, as stated, was in favor of the defendant.

We think that the learned trial judge was in error in refusing the plaintiff's requested instruction above stated. It amounted to a request for a directed verdict which embodied requests for instructions both that the defendant was guilty of negligence and that the plaintiff was free of contributory negligence. *Green v. Zile,* 225 Md. 339, 345, 170 A. 2d 753. The prayer may not have been in the best of form, but we think it was sufficiently clear to apprise the trial judge of what was requested. See *Green v. Zile, supra,* 225 Md. at 345; *Simmons v. Smith,* 202 Md. 367, 96 A. 2d 480; *Union Mining Co. v. Blank,* 181 Md. 62, 28 A. 2d 568; *Rinehart v. Risling,* 180 Md. 668, 26 A. 2d 411; *Clautice v. Murphy,* 180 Md. 558, 26 A. 2d 406. There is no question here that damages were caused by the accident. A request for a directed verdict for a plaintiff (as well as for a defendant) on any one or more issues is authorized by Maryland Rule 552 a if the circumstances are such as to permit of only one inference with regard to any such issue. *Garozynski v. Daniel,* 190 Md. 1, 57 A. 2d 339 (peremptory instruction that the plaintiff was not guilty of contributory negligence upheld); *Goldman v. Johnson Motor Lines,* 192 Md. 24, at 31, 63 A. 2d 622 (similar to *Garozynski*); *Richardson v. Boato,* 207 Md. 301, at 306, 114 A. 2d 49 (rule stated); *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570 (peremptory instruction re negligence of

234

defendant and freedom from contributory negligence of plaintiff should have been given). See also *Dunstan v. Bethlehem Steel Co.*, 187 Md. 571, 578, 51 A. 2d 288 (Rule 552 a or its predecessor not cited); *Dickson & Tweeddale v. Fowler*, 114 Md. 344, 79 A. 519; *Frey & Son, Inc. v. Magness*, 161 Md. 375, 382, 157 A. 400; the two cases last cited having been decided prior to Rule 552 a or its predecessor. Here the grounds for the motion were sufficiently stated under that Rule.

We think that this was clearly a case for the application of the so called boulevard rule as it has been developed over a good many years in this State. Because of the great number of local decisions establishing the general rule we do not think out of State cases very helpful. We do note in passing that *Hemrich v. Koch*, 177 Wash. 272, 31 P. 2d 529, heavily relied upon by the appellee, was a 5 to 4 decision and that the Washington Supreme Court there held that the same rule which applies to an uncontrolled intersection (that the driver on the right has the right of way) governed a boulevard case, which would not be the law in this State. See *Belle Isle Cab Co. v. Trammell*, 227 Md. 438, 177 A. 2d 404. In general, the boulevard rule has developed differently in Washington than in Maryland. Compare *Peerless Food Products Co. v. Barrows*, 49 Wash. 2d 879, 307 P. 2d 882, with *Shriner v. Mullhausen, supra.*

We must assume in passing upon the plaintiff's request for a directed verdict that the defendant did stop, as he testified that he did, before entering the boulevard. That, however, covers only one part of his duty. The other is to yield the right of way.

This court has repeatedly held that the duty of the unfavored driver to yield the right of way extends to traffic on the whole of the favored highway, and the driver on the favored highway has the right to assume that he will do so. *Ness v. Males*, 201 Md. 235, 93 A. 2d 541; *Baltimore Transit Co. v. O'Donovan*, 197 Md. 274, 277, 78 A. 2d 647; *Lilly v. State*, 212 Md. 436, 129 A. 2d 839. We find no inconsistency between these cases and *Fowler v. DeFontes*, 211 Md. 568,

128 A. 2d 395, where (211 Md. at 576) this court commented on the fact that the unfavored driver could have avoided the accident by stopping before driving his horse-drawn vehicle into the path of an oncoming motor vehicle approaching from the right on the favored highway. *Fowler* clearly held that the favored driver had a right to rely on the unfavored driver's yielding the right of way. That rule has been repeatedly stated. See, e.g., *Shedlock v. Marshall,* 186 Md. 218, 232, 46 A. 2d 349; *Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47; *Sonnenburg v. Monumental Tours,* 198 Md. 227, 81 A. 2d 617; *Sun Cab Co. v. Cusick,* 209 Md. 354, 121 A. 2d 188; *McDonald v. Wolfe,* 226 Md. 198, 172 A. 2d 481. Under such cases as *Cusick* and *McDonald,* it is the negligence of the unfavored driver, and not of the favored driver that is the cause of the accident.

Though the duty of the unfavored driver is not absolute, *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661, it is rigorous and only in rare instances is it proper to submit to the jury the issue of negligence or contributory negligence on the part of the favored driver. *Harper v. Higgs, supra,* 225 Md. at 34.

The fact that the defendant's view was obstructed by parked cars does not excuse him; on the contrary, it required the exercise of particular caution. See *Blinder v. Monaghan,* 171 Md. 77, 83, 188 A. 31. Nor does the fact that the favored driver was (as we must assume) exceeding the speed limit somewhat of itself constitute negligence or excuse the defendant's negligence. *Sun Cab Co. v. Cusick, supra; Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194; *Davis v. Taylor,* 217 Md. 84, 87, 141 A. 2d 706, and cases therein cited.

Nor does the fact that the two vehicles did not collide seem of any moment. The defendant's encroachment on the favored highway (even if it was more or less creeping) confronted the plaintiff with an emergency. He could not be sure that the plaintiff would stop; it seemed highly probable, to say the least, that a collision would occur if he failed to and if the plaintiff held his course. His swerve to the right when faced with the emergency situation was a perfectly natural, reflex movement caused by the defendant's negligence, and it in-

volved no contributory negligence attributable to him. *Burhans v. Burhans,* 159 Md. 370, 150 A. 795; *Coastal Tank Lines v. Carroll,* 205 Md. 137, 106 A. 2d 98. The swerve so caused was unquestionably the cause of the plaintiff's striking the curb. Here again we assume that the defendant stopped, as he said, a foot short of the center of the street, dividing the north and southbound lanes and that he did not actually enter a southbound lane. An exceedingly nice calculation of speed, time and distance would have been required of the plaintiff to determine that the defendant would stop and that he, the plaintiff, could safely continue without swerving. To require such calculations would be directly contra to the often repeated policy of the boulevard rule to avoid them and would inevitably conflict with its other frequently declared purpose to expedite traffic on through highways.

On the uncontroverted evidence (cf. *Smith v. Bernfeld,* 226 Md. 400, 405, 174 A. 2d 53), we conclude that the plaintiff was entitled to a directed verdict in his favor on the issues of the defendant's negligence and of his own freedom from contributory negligence. That would have settled the issue of liability leaving open only the question of damages.

> *Judgment reversed, with costs; and case remanded for the entry of a verdict for the plaintiff on the issue of liability and for a new trial on the issue of damages.*